# UNITED· STATES *v.* NORTHWAY.

## CERTIFICATE OF DIVISION FROM THE CIRCUIT COURT OF THE UNITED STATES ·FOR THE NORTHERN DISTRICT OF OHIO.

Argued January 4, 5, 1887. — Decided·February 7, 1887.

The question 'whether either of the counts in an indictment charges an offence under the laws of the United States, is too vague and general to be certified in a Certificate of Division of Opinion.,

An indictment charging that the defendant, " as president and agent " of a national ·bank, ·did ·the acts forbidden by Rev.·Stat. § 5209, does not vitiate the counts in which he is so described.

In an indictment, under Rev. Stat. § 5209, for wilfully misapplying the funds of a national bank, it is not necessary to charge that the moneys. and funds alleged to have been misapplied had been previously intrusted to the defendant; since a wilful and criminal misapplication of the funds ,of the association may be made by its officer or agent without having previously received. them into his manual possession,

In·charging, in an indictment, the president of a bank with aiding and abetting its cashier in· the misapplication of the funds of the bank, it is ‹ not necessary to aver that he then and there knew that the person so aided and abetted was. the cashier.

An indictment which charges in substance that the defendant was president and agent of a certain national bank theretofore duly organized and established, and then existing and doing business, under the laws of the United States, and that, being such president and agent, he did then and there " wilfully and unlawfully· and with intent to injure ·the said national banking association, and without the knowledge and consent thereof, abstract and .convert to his own use certain· moneys and funds ,of the property of the said association of the amount and value,"·etc., sufficiently describes and identifies the crime of abstracting the funds"of the bank created by Rev. Stat. § 5209.

An· indictment which charges that the defendant " was then and there president and agent'·of a certain national banking association, to ‚wit: [naming the association] theretofore duly organized and established, and then existing and doing business at [naming the place] under ·the laws of the United States," sufficiently states that that bank was organized under the national banking act, or to carry on the business of banking under a law of the United States.

· This was a certificate of division of opinion as to the sufficiency of the ' counts in an indictment for abstracting and· misapplying the funds of a national bank. The case is stated in the opinion of the court.

*Mr. Solicitor General* for the United States.

*Mr. J. B. Burrows* and *Mr. A. J. Marvin* for the defendant.

Mr. Justice Matthews delivered the opinion of the court.

On the 23d of April, 1885, the grand jury for the Eastern Division of the Northern District of Ohio returned an indictment, apparently founded upon § 5209 of the Revised Statutes, against Stephen A. Northway, as president and agent of the Second National Bank of Jefferson, a national banking association. On July 13, 1885, the record was, on motion of the district attorney, remitted to the Circuit Court. There are fifty-nine counts in the indictment; all of these were quashed except counts 2, 12, 15, 16, 28, 30, and 46, to each of which the defendant interposed a general demurrer. This demurrer came on for hearing before the Circuit Court, composed of the circuit judge and the district judge for that district, who certify to us that on the hearing they were divided and opposed in opinion on the following questions :

"1st. Whether either of said counts charges defendant with an offence under the laws of the United States.

"2d. Whether the charging of the defendant with committing the acts therein charged against him as 'president and agent' did not vitiate said counts of said indictment.

"3d. Whether under § 5209 of the Revised Statutes of the United States it was necessary in the indictment to charge that the moneys and funds alleged to have been embezzled and misapplied, or either, had been previously intrusted to the defendant.

"4th. Whether it is necessary in charging said defendant with aiding and abetting Sylvester T. Fuller, cashier of said bank, as in counts sixteen, twenty-eight, and forty-six, with the misapplication of the funds of said bank, to charge that the defendant then and there knew that said Fuller was such cashier.

"5th. Whether said second count sufficiently describes and identifies the crime of abstracting the funds of the bank created by the act of Congress.

" 6th. Whether the indictment sufficiently states that the Second National Bank of Jefferson was organized under the national banking act, or to carry on the business of banking under a law of the United States."

Section 5209 of the Revised Statutes, under which this indictment appears to have been drawn, is as follows:

" SEC. 5209. Every president, director, cashier, teller, clerk, or agent of any association, who embezzles, abstracts, or wilfully misapplies any of the moneys, funds, or credits of the association; or who, without authority from the directors, issues or puts in circulation any of the notes-of the association; or who, without such authority, issues or puts forth any certificate of deposit, draws any order or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill of exchange, mortgage, judgment, or decree; or who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association; and every person who with like intent aids or abets any officer, clerk, or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

We proceed to dispose of the several questions certified to us in their order.

1st. The question whether either of said counts charges said defendant with an offence under the laws of the United States, which is the first one certified, we decline to answer, for the reason that it is too vague and general, within the act of Congress authorizing certificates of this character and the repeated decisions of this court.

2d. We are of opinion that charging the defendant with committing the acts therein charged against him as " president and agent " did not vitiate the counts of the indictment in which that description is contained. The only grounds on which the contrary conclusion could be predicated are that the allegation is either too uncertain or is contradictory.

The allegation is not uncertain, as it might have been if it had been "president or agent." In that case, it might have been urged, that, as the offence was charged to have been committed by the defendant either as president or agent, it was uncertain in which of these capacities he was charged. For, although it might be said that a president is *ex officio* agent of the association, there may be many agents who are not president. Here the description is that he was "president and agent," and committed the offence charged in some capacity described by both terms. Neither is the description contradictory, because he may be both president and agent. There is no repugnance in the two characters. Even on the supposition that the statute means to make a distinction between the two offices of president and agent, there is nothing in the nature of either to prevent them both being held at the same time by one person, and the acts charged may in contemplation of law have been committed by him in both capacities.

*A fortiori* may this be the case, if every president of such an association is to be held by virtue of his office to be also, within the meaning of the act, an agent of the association. In that case, the use of the words "and agent" would be mere surplusage in the indictment. Being already included within the meaning of the word "president," it does not add anything to the description to introduce the words "and agent." This question is, therefore, answered in the negative.

3d. The twelfth count of the indictment charges that the defendant, with proper allegations of time and place, "was then and there president and agent of a certain national banking association, to wit, 'The Second National Bank of Jefferson,' theretofore duly organized and established, and then existing and doing business, in the village of Jefferson and county of Ashtabula, in the division and district aforesaid, under the laws of the United States; and the said Stephen A. Northway, as such president and agent, then and there had and received in and into his possession certain of the moneys and funds of said banking association of the amount and value of twelve thousand dollars, to wit, . . . then and there

being the property of said banking association, . . . and then and there being in the possession of said Stephen A. Northway, as such president and agent aforesaid, he, the said Stephen A. Northway, then and there . . . wrongly, unlawfully, and with intent to injure and defraud said banking association, did embezzle and convert to his, said Stephen A. Northway's, own use," &c.

The fifteenth count is for wrongfully, unlawfully, and wilfully misapplying certain described funds of the bank, with intent to injure the association, and without the knowledge and consent thereof, by paying and causing to be paid to certain persons, out of the moneys, funds, and credits then and there belonging to the property of the association, a large sum of money in the purchase by him, the said Northway, for the use, benefit, and advantage of himself, of a large number of shares of the capital stock of certain stock companies. It is not alleged in this count that the moneys and funds so alleged to have been misapplied had previously come into the possession of the defendant by virtue of his office and character of president and agent.

In respect to the counts for embezzlement, it is quite clear that the allegation is sufficient, as it distinctly alleges that the moneys and funds charged to have been embezzled were at the time in the possession of the defendant as president and agent. This necessarily means that they had come into his possession in his official character, so that he held them in trust for the use and benefit of the association. In respect to those funds, the charge against him is that he embezzled them by converting them to his own use. This we think fully and exactly describes the offence of embezzlement under the act by an officer and agent of the association.

With respect to the fifteenth count, and other similar counts charging a wilful misapplication of the funds of the bank, this allegation is omitted; that is, it is not alleged that the moneys and funds charged to have been misapplied had previously come into the possession of the defendant. Neither do we think this to be necessary to a description of the offence. A wilful and criminal misapplication of the funds of the associa-

tion may be made by an officer or agent of the bank without having previously received them into his manual possession. In the case of the *United States* v. *Britton*, 107 U. S. 655, 669, the offence of wilfully misapplying the funds of a banking association, as defined by the statute, was considered with reference to the facts in that case. It was there held that a wilful and criminal misapplication of the funds, as defined by § 5209, did not include every case of an unlawful application of funds, inasmuch as in the very statute itself there were other instances of unlawful misapplication, evidently not embraced within the intention of § 5209. For that reason it was held, in that case, that it was necessary to specify the particulars of the application, so as to distinguish that charged in the indictment as wilful and criminal from those others contemplated by the statute which were unlawful but not criminal; and it was held to be of the essence of the criminality of the misapplication that there should be a conversion of the funds to the use of the defendant, or of some person other than the association, with intent to injure and defraud the association, or some other body corporate or natural person. Now, if in addition it be necessary to the commission of the offence of wilfully misapplying the funds of the bank that they should have come previously into the possession of the defendant in his official capacity, so that he could be said to have been intrusted with their possession, all distinction between the offences of wilfully misapplying the funds and of embezzlement would disappear. But it is evidently the intention of the statute not to use the words "embezzle" and "wilfully misapply" as synonymous. In order to misapply the funds of the bank it is not necessary that the officer charged should be in actual possession of them by virtue of a trust committed to him. He may abstract them from the other funds of the bank unlawfully, and afterwards criminally misapply them, or by virtue of his official relation to the bank he may have such control, direction, and power of management as to direct an application of the funds in such a manner and under such circumstances as to constitute the offence of wilful misapplication. And when it is charged, as in the counts of this indict-

ment, that he did wilfully misapply certain funds belonging to the association, by causing them to be paid out to his own use and benefit in unauthorized and unlawful purchases, without the knowledge and consent of the association, and with the intent to injure it, it necessarily implies that the acts charged were done by him in his official capacity, and by virtue of power, control, and management which he was enabled to exert by virtue of his official relation. This, we think, completes the offence intended by the statute of a wilful misapplication of the moneys and funds of a national banking association. We, therefore, answer the third question in the negative.

4th. The fourth question is whether it is necessary, in charging the defendant with aiding and abetting Sylvester T. Fuller, the cashier of the bank, with the misapplication of its funds, to charge that the defendant then and there knew that said Fuller was such cashier. We answer this question in the negative. The counts in question charge Fuller with having made the misapplication of the funds of the bank as cashier. They further allege that the defendant, being president and agent of the association, wilfully, knowingly, and unlawfully, and with intent to injure said banking association, before the misdemeanor was committed, "did aid, abet, incite, counsel, and procure the said Sylvester T. Fuller, he, the said Fuller, then and there being cashier and agent as aforesaid, so as aforesaid to wrongfully, unlawfully, and wilfully misapply," &c. We do not think it is necessary, in an indictment for this offence, to charge any *scienter* more distinctly. The acts charged against Fuller could only be committed by him by virtue of his official relation to the bank; the acts charged against the defendant likewise could only be committed by him in his official capacity. Both are alleged to be officers of the same corporation. The knowledge that each had of the official relation of the other is necessarily implied in the coexistence of this official relation on the part of both towards the same corporation. It is as cashier that Fuller was aided and abetted by the defendant in the commission of his offence. This allegation necessarily imputes knowledge of his official character.

5th. The second count of the indictment is for the offence of abstracting the moneys and funds of the association. In substance, it charges that the defendant was president and agent of the Second National Bank of Jefferson, theretofore duly organized and established, and then existing and doing business, under the laws of the United States; and that the defendant, being president and agent as aforesaid, did then and there "wilfully and unlawfully, and with intent to injure the said national banking association, and without the knowledge and consent thereof, abstract and convert to his, the said Stephen A. Northway's, own use certain moneys and funds of the property of said association, of the amount and value," &c. We see no reason to doubt the sufficiency of this description of the offence. It is true that the word "abstract," as used in this statute, is not a word of settled technical meaning like the word "embezzle" as used in statutes defining the offence of embezzlement, and the words "steal, take, and carry away," as used to define the offence of larceny at common law. It is a word, however, of simple, popular meaning, without ambiguity. It means to take or withdraw from, so that to abstract the funds of the bank, or a portion of them, is to take and withdraw from the possession and control of the bank the moneys and funds alleged to be so abstracted. This, of course, does not embrace every element of that which under this section of the statute is made the offence of criminally abstracting the funds of the bank. To constitute that offence, within the meaning of the act, it is necessary that the moneys and funds should be abstracted from the bank without its knowledge and consent, with the intent to injure or defraud it or some other company or person, or to deceive some officer of the association, or an agent appointed to examine its affairs. All these elements are contained in the description of the offence in the count in question; the count is, therefore, sufficient within the decisions of this court upon similar statutes. *United States* v. *Mills,* 7 Pet. 138; *United States* v. *Simmons,* 96 U. S. 360; *United States* v. *Carll,* 105 U. S. 611; *United States* v. *Britton,* 107 U. S. 655.

Unlike the word "misapply," as used in the same section,

the word "abstract" is not ambiguous, because it does not appear from other parts of the statute that there are two or more kinds of abstracting, both unlawful, but only one described as a criminal offence. The word "abstract," as used in the statute, therefore, has but one meaning, being that which is attached to it in its ordinary and popular use. It is to be accepted with that meaning in framing an indictment under the section, which is not required, in order to be sufficient, to contain more than those allegations which are necessary, when added to the allegation of abstracting, to complete the description of the offence intended by the statute. This the count in question sufficiently does.

It is contended, however, on behalf of the defendant, that the offence of "abstracting" the moneys and funds of the bank under this section of the statute is exactly equivalent to the offence of larceny, and that it can only be technically and appropriately described by the words used to describe the offence of larceny. So that the charge should have been "did abstract, take, and carry away." The answer to this point, it seems to us, is twofold. If, as is contended, an analysis of the section of the statute demonstrates that the legislative intent was simply to describe the offence of larceny by an officer or agent of the bank of its funds, then there is no ambiguity or uncertainty in using the word "abstract" in the indictment, as used in the statute, fully to describe the offence charged; for, according to the argument, it can mean nothing else, and the legislature, by substituting the word "abstract" for the words which are required technically to describe the offence of larceny, have justified the use of the same word in the indictment. But, in the next place, we do not admit the proposition that the offence of "abstracting" the funds of the bank under this section is necessarily equivalent to the offence of larceny. The offence of larceny is not complete without the *animus furandi*, the intent to deprive the owner of his property, but under § 5209 an officer of the bank may be guilty of "abstracting" the funds and money and credits of the bank without that particular intent. The statute may be satisfied with an intent to injure or defraud some other

company, body politic or corporate, or individual person, than the banking association whose property is abstracted, or merely to deceive some other officer of the association, or an agent appointed to examine its affairs. This intent may exist in a case of abstracting without that intent which is necessary to constitute the offence of stealing. We answer the fifth question, therefore, in the affirmative.

6th. The sixth question is whether the indictment sufficiently states that the Second National Bank of Jefferson was organized under the national banking act, or to carry on the business of banking under the laws of the United States. The language of the indictment is that the defendant " was then and there president and agent of a certain national banking association, to wit: ' The Second National Bank of Jefferson,' theretofore duly organized and established and then existing and doing business at the village of Jefferson and county of Ashtabula, in the division and district aforesaid, under the laws of the United States."

We do not understand the necessity of this question; the allegation seems to be perfectly explicit. The defendant is charged by virtue of his office as president and agent of a national banking association, to wit: The Second National Bank of Jefferson, which, it is further alleged, had been theretofore duly organized and established and was then existing and doing business under the laws of the United States. This can mean only that it was organized and established as a banking association under the act of Congress authorizing the organization and establishment of national banks, and that it was in existence and doing business at the time of the alleged offence as such national banking association, because it could not be organized and established and existing and doing business under the laws of the United States in any other capacity. This question is accordingly answered in the affirmative.

*These answers will be accordingly certified to the Circuit Court.*