UNITED STATES v. JEWETT.

(Circuit Court, D. Massachusetts. December 4, 1897.)

No. 1,803.

1. NATIONAL BANKS—EMBEZZLEMENT—AGENT IN LIQUIDATION.
   Rev. St. § 5209, making embezzlement, abstraction, or willful misapplication of the property of a national banking association by an officer or agent a misdemeanor, applies to an agent in liquidation appointed by the stockholders.

2. SAME—INDICTMENT.
   Averments in an indictment that the defendant was appointed agent in liquidation for a national banking association, and accepted that office, are not inconsistent with further averments that he afterwards acted as president, clerk, and director of the association.

3. SAME—CHARGING RECEIPT OF PROPERTY IN DIFFERENT CAPACITIES.
   An indictment against a defendant for the embezzlement and abstraction of the property of a national banking association is not demurrable because it charges the receipt of the property by him in different capacities, both as an officer and as an agent of the association.

4. SAME—DUPLICITY.
   An averment in an indictment against an officer and agent of a national banking association that the defendant "did steal, abstract, take, and carry away" property of the association, does not charge two offenses.

5. SAME—SUFFICIENCY OF AVERMENTS—DESCRIPTION OF OFFENSE.

    An allegation that defendant, an officer and agent of a national banking association, did secretly, in a manner and by particulars to the jurors unknown, willfully, unlawfully, and fraudulently convert to his own use, and misapply, from said association to himself, certain funds, sufficiently charges the offense of "willful misapplication" of property, under Rev. St. § 5209.

William S. Jewett was indicted for embezzlement, abstraction, and willful misapplication of the property of the Lake National Bank of Wolfborough, N. H. This hearing is upon demurrer to the indictment.

William S. B. Hopkins and Hollis R. Bailey, for plaintiff.

Boyd B. Jones, U. S. Atty., and John H. Casey, Asst. U. S. Atty.

BROWN, District Judge. This indictment contains 96 counts under section 5209 of the Revised Statutes of the United States, in which are charged embezzlement, abstraction, and willful misapplication by the defendant of the property of the Lake National Bank of Wolfborough, N. H. In each count it is alleged that, before any of the acts charged to have been committed by the defendant, the stockholders of the Lake National Bank had voted to go into liquidation and had appointed the defendant Jewett agent in liquidation. The defendant contends upon demurrer that section 5209 applies only to going banks, and not to a bank in voluntary liquidation, and that consequently the word "agent," in the section, does not include an agent for liquidation. I am of the opinion, however, that such an agent is within the statute. The vote of the stockholders does not terminate the existence of the association. Though its transactions are restricted, it still exists as a legal person capable of acting by an agent; and the defendant was, upon the allegations of the indictment, the agent of the association, though appointed for a special purpose by the vote of its stockholders. National Bank v. Insurance Co., 104 U. S. 54, 74; First Nat. Bank of Bethel v. Pahquioque Bank, 14 Wall. 383; Rev. St. §§ 5221–5224. Moreover, I see no reason to doubt that an agent in liquidation, equally with an agent for ordinary business, is within the spirit of the section, as well as within its express terms. The protection afforded by the statute against embezzlement, abstraction, or willful misapplication of the property of the association should be held, in the absence of reasons to the contrary, to continue as long as the necessity for such protection exists.

It is further urged upon demurrer that the averments that Jewett was appointed agent in liquidation, and accepted that office, are inconsistent with averments that he afterwards acted as president, clerk, or director, and that the counts containing such averments are bad for repugnancy. As the appointment of an agent in liquidation does not terminate the existence of the association. though it restricts its transactions, so it does not terminate the official character of its officers, though it may limit their powers. There is no legal impossibility that an agent in liquidation should be also president, director, and clerk. U. S. v. Northway, 120 U. S. 328, 329, 7 Sup. Ct. 580. The limitation of the lawful powers of the officer does not limit the

power of the individual holding the office to commit the offenses punishable under section 5209, nor does the appointment of an agent in liquidation necessarily deprive the official of his special facilities for appropriating the bank's property, or afford a reason for excepting him from the operation of a statute which in terms makes him amenable so long as he holds a certain office. If it is intended to argue that after his appointment as agent the defendant could receive, hold, or apply the funds in no other capacity, and that, therefore, an averment that he also received or held or applied them as president and clerk, is the statement of a legal impossibility, such argument, even if its premises are conceded, does not support the demurrer, but would lead merely to the rejection, as surplusage, of the words alleging the legal impossibility. As the offense is the same, and punishable in the same way, whether one or all of the allegations of his official position are true, and as he is fully apprised that proof may be offered of each, the defendant is not prejudiced in his defense by uniting to a charge of the offense three distinct grounds for holding him amenable under the statute.

The defendant also claims that certain of the counts are bad for duplicity, in that they contain a charge of the common-law crime of larceny, joined with a charge of the statutory crime of abstracting. The allegation is that the defendant "did steal, abstract, take, and carry away." The terms "steal, take, and carry away," however, do not charge an offense other than that denoted by the word "abstract." The word "abstract" covers the offense of larceny, which is but one form of the offense of abstraction. U. S. v. Northway, 120 U. S. 327, 7 Sup. Ct. 580. Whether it be held that the word "steal" is used to apprise the defendant of the particular kind of abstraction with which he is charged, or that it is merely an allegation of what is included within the term "abstract," and which can therefore be rejected as surplusage, it cannot be said, in either view, that the counts charge the defendant with two distinct offenses. To certain counts, charging that said Jewett did secretly, in a manner and by particulars and in a mode to the jurors unknown, knowingly, willfully, unlawfully, and fraudulently convert to his own use, and misapply, from said association to himself, certain funds and credits, it is objected that they violate the rule stated in Batchelor v. U. S., 156 U. S. 426, 15 Sup. Ct. 446, that the words "willfully misapply" must be supplemented by further averments, showing how the misapplication was made, and that it was an unlawful one. The concluding paragraph of the opinion in Batchelor v. U. S., supra, is as follows:

"Such being the nature and effect of the specific allegations in the indictment as to the manner in which the defendant acted, there are no sums, clearly and sufficiently specified, to which can be referred the concluding averment, 'all of which said sums were misapplied willfully, and in the manner aforesaid, out of the moneys, funds, and credits of said association,' and were converted to the defendant's use, benefit, and advantage, with the intention to injure and defraud the association and its depositors, and other persons and corporations doing business with it."

The implication of this language is that the allegation that the sums were converted to the defendant's own use, etc., with intent to defraud, etc., might meet the requirement of "averments to show

how the misapplication was made, and that it was an unlawful one."

In Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 939, an indictment was sustained in which the specification of the method of misapplication was in the words, "by surrendering and delivering the note of Evans, without receiving payment therefor for the bank." The indictment was sustained, not because of the allegation of specific facts by themselves necessarily constituting an offense, since the acts alleged were in themselves indifferent, but because misapplication was charged, and the essential ingredients set forth. The court says (page 590, 153 U. S., and page 937, 14 Sup. Ct.):

"Every element of the offense being set forth in the earlier part of the count, there was no necessity of repeating it when the particular credit misapplied is described, nor of negativing every possible theory consistent with an innocent delivery of the note to the defendant. * * * The general words of a fraudulent misapplication to the use and benefit of the defendant, and of an intent by so doing to defraud the bank, are of themselves inconsistent with an honest purpose."

The charge was substantially in the language of the statute, with the addition of the necessary ingredient of a conversion with fraudulent intent. U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. 512; Coffin v. U. S., 156 U. S. 432, 448, 15 Sup. Ct. 394.

I find no necessary inconsistency between an allegation that the defendant did misapply and convert to his own use certain property, and an allegation that the grand jury is ignorant of the exact means whereby the misapplication and conversion were effected. Even should a defendant conceal or destroy all evidence of the details of the particular transaction, the general fact that assets of the bank in his possession had been misapplied and converted to his own use, with intent to defraud, might be clearly established. The counts 91, 92, 93, 94, 96, distinctly charge misapplication and conversion of assets of the bank to the use of the defendant, and thus show that the act charged was not maladministration, but the criminal misapplication punishable by section 5209. Upon the authority of Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 939, I am of the opinion that these counts should be sustained.

Other causes of demurrer do not require special consideration. As was said in Cochran v. U. S., 157 U. S. 286, 290, 15 Sup. Ct. 630:

"Few indictments under the national banking law are so skillfully drawn as to be beyond the hypercriticism of astute counsel,—few which might not be made more definite by additional allegations. But the true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction."

I am of the opinion that, upon applying this test, it will be found that each of the counts in the indictment contains every element of the offense intended to be charged, apprises the defendant what he is to meet, and will fully protect the defendant if pleaded to a subsequent indictment. The demurrers are therefore overruled.