## WESTFALL v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit. June 30, 1927.

Nos. 4596, 4597.

1. Banks and banking ⬯288½—One participating in deposit and payment or collection of certificate of deposit held guilty of abstracting funds of bank with intent to injure bank and deceive examiner; "abstract" (12 U. S. C. A. § 592).

One who participated in deposit and payment or collection of certificate of deposit of Federal Reserve member bank to deceive examiner by covering accumulated unpaid drafts, notes, and checks *held* guilty of abstracting moneys and funds of such bank with intent to injure and defraud it, and to deceive examiner, within Rev. St. § 5209, as amended by Act Sept. 26, 1918, c. 177, § 7 (Comp. St. § 9772 [12 U. S. C. A. § 592]); "abstract" meaning to take or withdraw from.

2. Indictment and information ⬯83, 125(40)—Indictment charging defendant aided and abetted in abstracting moneys from Federal Reserve member bank held not to negative participation as principal, nor duplicitous (12 U. S. C. A. § 592).

That indictment averred that defendant aided and abetted violation of Rev. St. § 5209, as amended by Act Sept. 26, 1918, c. 177, § 7 (Comp. St. § 9772 [12 U. S. C. A. § 592]), prohibiting abstracting of moneys and funds of Federal Reserve Bank or any member bank, with intent to injure bank and deceive examiner, *held* not to negative his participation as principal, nor open way to attack indictment for duplicity.

3. Criminal law ⬯1170(2)—Where witness was patient at insane hospital between time of crime and trial, rejection of adjudication of insanity held not substantial error, in view of other evidence.

Where government witness had been admitted as insane patient at state hospital between time of crime and trial, but had been paroled when called to testify, rejection of formal adjudication of insanity *held* not substantial error, in view of other evidence concerning his insanity.

4. Banks and banking ⬯288½—Conspiracy is not necessary incident to offense of unlawfully abstracting moneys from Federal Reserve member bank (12 U. S. C. A. § 592).

Conspiracy is not necessary incident to and element of offense of abstracting moneys of Federal Reserve Bank or member bank, with intent to injure bank or deceive officer or examiner, defined by Rev. St. § 5209, as amended by Act Sept. 26, 1918, c. 177, § 7 (Comp. St. § 9772 [12 U. S. C. A. § 592]).

**5. Criminal law ⬤⇒200(6)—One may be prosecuted as principal and as conspirator to commit offense (Comp. St. § 10201).**

One may be prosecuted both as principal in and as conspirator to commit offense, in view of Penal Code, § 37 (Comp. St. § 10201), since, where separate offenses arise from same transaction, protection against double jeopardy does not apply.

In Error to the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

C. O. Westfall and others were convicted of abstracting and conspiring to abstract funds of a Federal Reserve Bank or member bank, with intent to injure it, and defendant Westfall brings error. Affirmed.

Dean S. Face, of Grand Rapids, Mich. (Jewell, Face & Messinger, of Grand Rapids, Mich., on the brief), for plaintiff in error.

Howard A. Ellis, Asst. U. S. Atty., of Grand Rapids, Mich. (Edward J. Bowman, U. S. Atty., of Grand Rapids, Mich., on the brief), for the United States.

Before DONAHUE and MOORMAN, Circuit Judges, and HICKENLOOPER, District Judge.

PER CURIAM. Separate indictments were returned in the court below against the defendant Westfall, here plaintiff in error, one Carl W. Himmler, and others. The indictment upon which the defendant was first tried charges that Himmler, as branch manager of a certain state banking association member of the Federal Reserve System, as the officer, agent, and employee of the bank, and Westfall, as aiding and abetting, violated section 5209 of the Revised Statutes, as amended September 26, 1918 (chapter 177, § 7, 40 Stat. 972; Comp. Stat. § 9772; title 12, c. 5, § 592, U. S. Code), by which it is made a misdemeanor for any officer, director, agent, or employee of any Federal Reserve Bank, or any member bank, to abstract any of the moneys, funds or credits of such Federal Reserve Bank or member bank, with intent to injure or defraud such Federal Reserve Bank or member bank, or to deceive any officer of such Federal Reserve Bank or member bank, or any agent or examiner appointed to examine the affairs of such Federal Reserve Bank or member bank. This section also provides that every person who, with like intent, aids and abets any officer, director, agent, employee, or receiver in any violation of this section shall be deemed guilty of the same offense.

After conviction upon the indictment for the substantive offense the same defendants were placed upon trial under an indictment charging conspiracy to commit the crime charged as a substantive offense in the first indictment. The plaintiff in error duly moved his discharge and the return of a verdict in his favor upon the ground that he had been already placed in jeopardy for the same offense in the previous trial. This motion was overruled, a verdict of guilty was returned, and the court pronounced separate sentences of imprisonment in the federal penitentiary in the two cases; said sentences, however, running concurrently.

The contention most earnestly urged upon the court, and which was applicable to both convictions, was that the provisions of the Act of Congress of December 23, 1913 (c. 6, § 9, 38 Stat. 259), as amended June 21, 1917 (c. 32, § 3, 40 Stat. 232; Comp. Stat. § 9792; U. S. Code, tit. 12, c. 3, § 324), to the effect that officers, agents, and employees of a state bank member of the Federal Reserve System shall be subject to the provisions of and to the penalties prescribed by section 5209 of the Revised Statutes, was unconstitutional. This question was certified to the Supreme Court, and the contention is answered and the constitutionality of the provision is sustained by the opinion of that court delivered May 16, 1927. We pass, therefore, to a consideration of the other contentions of error in the trial of both cases. [1] The evidence disclosed that with the consent of the defendant Himmler a number of drafts, notes, and checks of the defendant Westfall and the enterprises with which he was associated had been permitted to accumulate in the hands of Himmler, were unpaid, and were carried as cash items, to the aggregate amount of approximately $9,650. Learning that the bank examiners were about to enter upon an examination of the branch bank of which Himmler was manager, this fact was communicated to Westfall by telephone, and several of his associates were given blank checks upon another bank, and were sent to Himmler to cover the matter for the examination by giving checks upon the other bank for the aggregate amount of the delinquent items, which new checks would appear as in the process of collection. In order that such checks might be paid upon presentation, the certificate of deposit for $10,-000 described in the indictment was given to the associates of Westfall, returned to him or brought to his notice, and deposited for the purpose of meeting the then outstanding

checks. Upon these facts it was earnestly contended that Westfall could not have been guilty of aiding and abetting in abstracting the moneys, funds, or credits of the Federal Reserve member bank, since the fact that the certificate had been issued did not come to his attention until afterward, and the crime was complete as far as Himmler was concerned when the certificate was issued and delivered.

[2] The indictment sets forth the means by which the funds of the bank were abstracted, and it is there thus alleged that there were no funds whatever on deposit for the payment of the certificate of deposit, and no consideration of any kind moved to the bank therefor; that the certificate of deposit was thereafter paid by Himmler, and that the funds thus paid were converted to the use, benefit, and advantage of Westfall and others, and were wholly lost to the member bank. As pointed out by the District Judge, the bank had not parted with any funds until the certificate was presented for payment and paid; there had been no abstracting of funds; there had been a crime committed by Himmler in issuing the certificate of deposit without authority, and when there were no funds deposited in the bank to warrant it, but that was not the crime which is charged in the indictment. The crime of illegally abstracting the moneys and funds of the member bank with intent to injure and defraud such bank and to deceive the examiner appointed to examine the affairs of such member bank was not a completed act until after the participation of Westfall in the deposit and payment or collection of such certificate. The word "abstract" is to be given its simple, popular meaning, and is without ambiguity. "It means to take or withdraw from, so that to abstract the funds of the bank, or a portion of them, is to take and withdraw from the possession and control of the bank the moneys and funds alleged to be so abstracted." U. S. v. Northway, 120 U. S. 327, 334, 7 S. Ct. 580, 584 (30 L. Ed. 664). The crime charged is a single one, in which Westfall participated, and the fact that the indictment avers that he aided and abetted the violation of the provisions of R. S. § 5209 (U. S. Code, tit. 12, c. 5, § 592), consistent with the language of that section, does not negative his participation as a principal, nor open the way to attack of the indictment for duplicity. Prettyman v. U. S., 180 F. 30 (C. C. A. 6).

[3] It having appeared that one of the important government witnesses had been ad-

mitted as an insane patient at the State Hospital for the Insane between the time of the alleged crime and the trial, and had been paroled from such hospital as "practically normal for him," when he was called to testify, counsel for defendant tendered the court record adjudicating such witness as insane. Error is assigned to the refusal of the court to admit this record or adjudication of insanity in evidence, either as touching the capacity of the witness to testify or his credibility. In view of the fact that the evidence already contained testimony that this witness had been admitted to the hospital as an insane patient, and detailing the nature of his insanity as that of "constitutional inferiority, not intellectually, but emotionally, perhaps," his condition and improvement while at the hospital, and his mental condition both at the time of discharge and of trial, we do not feel that any substantial error was committed in refusing to incumber the record with the formal adjudication of insanity.

Plaintiff in error also earnestly insists that, having been charged in the indictment and convicted of aiding and abetting in the commission of the substantive offense of abstracting moneys and funds of a Federal Reserve member bank, and not being himself an officer, director, agent, or employee of such bank, and thus being incapable of directly committing the substantive offense, and only open to prosecution as a principal under the provisions of R. S. § 5209 (or section 332 of the Criminal Code [Comp. St. § 10506]), the offense charged is identical with the charge of conspiracy to commit the substantive offense, that such conspiracy is necessarily included as an element of the substantive offense, and that after conviction of the substantive offense he cannot be tried upon the separate charge of conspiracy. It is conceded that there was practical identity of evidence introduced and facts proved in the two trials, and if the element of conspiracy must of necessity be included as an incident to or part of the substantive offense, it would seem that an indictment for conspiracy was no more admissible after conviction of the substantive offense than a second indictment for the substantive offense would have been. Hans Neilsen, Petitioner, 131 U. S. 176, 185, 9 S. Ct. 672, 33 L. Ed. 118. See, also, In re Snow, 120 U. S. 274, 7 S. Ct. 556, 30 L. Ed. 658. The situation, it is urged, is then comparable to the return of an indictment for an indictable attempt after conviction for the accomplished crime. The aiding and abet-

ting, either under R. S. § 5209, or Criminal Code, § 332, is then said to be nothing more than a conspiracy in which the purpose of the conspiracy had been accomplished.

[4] On first impression this contention is persuasive. However, we think that it is unsound, and founded upon the false premise, that the conspiracy is a necessary incident to and element of the substantive offense, and the same offense. While incapable of committing the substantive offense independently and without the aid of some officer, agent, or employee of the bank, Westfall was a direct participant and joint principal in its commission. He did not simply counsel, plot, and plan the crime, but he acted and aided in its commission, and it was his act in negotiating the certificate of deposit which formed an essential element and necessary step in abstracting the funds of the bank.

[5] Where separate offenses arise from the same transaction, the protection against double jeopardy does not apply (Gavieres v. U. S., 220 U. S. 338, 31 S. Ct. 421, 55 L. Ed. 489), and it is now too firmly established to justify question that one may be prosecuted both as a principal in, and as a conspirator to commit, an offense (U. S. v. Rabinowich, 238 U. S. 78, 85, 35 S. Ct. 682, 59 L. Ed. 1211, and cases there cited). These cases sustain the doctrine that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy, and if conspirators who have joined in the actual commission of crime are separately punishable for both the conspiracy and the substantive offense, the fact that one of such conspirators and principals in the substantive offense was incapable of independently committing such substantive offense cannot avoid the application of the established doctrine. If there is in fact and effect double prosecution for the same offense under this doctrine, or an abuse of the power to prosecute for conspiracy arising from the overzealous attitude of prosecuting officials, the remedy must be found in legislation which will prohibit prosecutions under section 37 of the Penal Code (Comp. St. § 10201), in cases where the accused has been tried and convicted for the substantive offense. The existence of abuses, however, does not justify our ignoring the established doctrine.

The court has also given careful consideration to the questions of admissibility of evidence and the other assignments of error, but we find none that is considered worthy of special treatment.

The judgments of the court in both cases are affirmed.